[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2010
JOHN LEY
CLERK

_____

No. 09-13195

_____

D. C. Docket No. 08-00190-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN EARL SNEED,
a.k.a. Evan Sneed,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 24, 2010)

Before HULL, WILSON and FARRIS,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Jerome Farris, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Kevin Earl Sneed appeals his 180-month sentence for possession of a firearm by a convicted felon and possession of marijuana. On appeal, Sneed argues that his sentence was improperly enhanced under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), because the district court used police reports to determine whether Sneed's prior drug convictions were committed on different occasions and thus qualified as predicate felonies for the § 924(e) enhancement. After review, we conclude the district court erred in relying on non-Shepard approved records and thus vacate Sneed's sentence.

## I. BACKGROUND FACTS

### A. Indictment and Guilty Plea

While responding to a burglary call, officers spotted Sneed, who matched the description of the suspect, walking down the road. When officers attempted to stop Sneed to talk to him, he ran and was apprehended when he fell. Underneath Sneed's body, officers found a loaded handgun and a clear plastic bag containing a green leafy substance that later tested positive for marijuana.

Sneed was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1), and possession of marijuana, in violation of 21 U.S.C. § 844(a) (Count 2). As enhancements to the firearm offense in Count 1, the indictment charged that Sneed had these three prior felony drug

2

convictions: "January 27, 2003, Distribution of a Controlled Substance, (3 counts), case numbers CC 2002-000301, CC 2002-000302, CC 2002-000303, in the Circuit Court of Pike County, Alabama."[1]

Sneed pled guilty to both counts of the indictment. The plea agreement stated the factual basis for the plea, and listed the same three prior felony drug convictions: "June 18, 2001, Unlawful Distribution of a Controlled Substance (three counts), case number CC 2002-000301; CC 2002-000302; and CC 2002-000303, in the Circuit Court of Pike County, Alabama." Sneed waived his right to appeal his sentence except for his right to appeal the application of the ACCA.

## B. Presentence Investigation Report

The Presentence Investigation Report ("PSI") stated that Sneed's base offense level was 20. However, the PSI also concluded that Sneed qualified as an armed career criminal under § 924(e)(1) because he had "three prior convictions in Pike County, Alabama, case numbers CC02-301, 302, and 303." Thus, the PSI concluded that Sneed had a base offense level of 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B), and was subject to § 924(e)(1)'s mandatory minimum fifteen-year sentence. With a three-level reduction for acceptance of responsibility, the

---

[1] The indictment also charged that Sneed had a September 4, 2003 conviction for promoting prison contraband in the Circuit Court of Pike County, Alabama. It was later learned that Sneed's twin brother, Earl Evan Sneed, committed this offense.

PSI calculated a total offense level of 30.

Based on Sneed's three drug convictions and other prior convictions, the PSI calculated nine criminal history points, resulting in a criminal history category of IV. Paragraph 34 of the PSI listed the three drug convictions and described the date, location, and time of the offenses as follows:

> The defendant was represented by counsel. Details of count one reveal that on September 26, 2001, at 5:04 p.m., a confidential informant working with [the Troy Police Department] purchased .07 grams of crack cocaine from Sneed. The transaction was caught on video surveillance. Details of count 2 reveal that on September 26, 2001, at 5:43 p.m., a confidential informant purchased .12 grams of crack cocaine from the defendant. The transaction was observed by a Pike County Sheriff's Deputy who positively identified the subject as Kevin Sneed. Details of count three reveal that on October 11, 2001, at 5:29 p.m., a confidential informant purchased .12 grams of crack cocaine from the defendant. This transaction was video taped. All of these sales occurred within a three mile radius of a public housing project owned by a housing authority.

A criminal history category of IV and a total offense level of 30 yielded an advisory guidelines range of 135 to 168 months' imprisonment. Due to the fifteen-year statutory mandatory minimum, the PSI advised that the advisory guidelines range was 180 months, pursuant to U.S.S.G. § 5G1.1(b).

## C.    State Indictment and Police Reports

In his written objections to the PSI, Sneed contended that he did not qualify as an armed career criminal under the ACCA and its corresponding guideline,

U.S.S.G. § 4B1.4(a). Sneed did not deny that he had the three prior drug convictions. Rather, Sneed argued that "the offenses listed in paragraph 34 of the [PSI] did not occur on different occasions" and that the PSI's "finding that the offenses occurred on different occasions is not reflected in the state indictment, indeed, the indictment merely reflects three counts and provided neither the day or the time." Sneed also objected "to the inclusion of the details in paragraph 34, as it 'exceeds that allowed by the U.S. Supreme Court's opinion in Shepard v. United States, 544 U.S. 12, 26 (2005) . . . ."

In response, the government filed a sentencing memorandum and attached a copy of the state indictment that charged Sneed with the three drug convictions. Specifically, each count of the state indictment contained the exact same language and alleged that Sneed "did unlawfully sell, furnish, give away, manufacture, deliver or distribute a controlled substance, to wit: COCAINE, in violation of Section 13A-12-211 of the Code of Alabama, while the said KEVIN SNEED, was within a three mile radius of a public housing project owned by a housing authority, did sell a controlled substance, to wit: COCAINE, in violation of Section 13A-12-270 of the Code of Alabama, Against the Peace and Dignity of the State of Alabama." None of the counts contained dates, times or locations for the charged offenses.

5

In addition, the government attached copies of police reports for each state offense. These reports indicate that each of the three offenses was the result of a controlled buy using a confidential informant. The first state offense occurred on September 26, 2001, at 5:04 p.m., in a trailer park beside the housing project in Spring Hill. On this occasion, the confidential informant purchased .07 grams of crack cocaine from Sneed for $20.00. The second state offense occurred less than an hour later, at 5:43 p.m, when the same confidential informant returned to the same trailer park and purchased .12 grams of crack cocaine from Sneed for $20.00.[2] The third offense occurred on October 11, 2001 in the Spring Hill housing project when a confidential informant purchased .12 grams of crack cocaine from Sneed for $20.00.

The government argued that: (1) under this Court's binding precedent in United States v. Richardson, 230 F.3d 1297 (11th Cir. 2000), the district court could examine police reports to determine whether qualifying predicate felonies were separate for purposes of the ACCA; and, (2) here, those reports showed that the three state offenses were separate because they were temporally distinct drug sales.

---

[2]Although the confidential informant's name is redacted in the police reports, it appears the same confidential informant was used in both September 26, 2001 controlled buys because, according to the police reports, during the second purchase the confidential informant told Sneed that the "dope he bought earlier was good shit and asked for another twenty."

**D.** **Sentencing**

At sentencing, Sneed reasserted his objections to application of the ACCA, including use of the police reports to determine whether he had the predicate prior felony offenses to trigger the § 924(e) enhancement. Sneed argued that Richardson was abrogated by Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005). The district court overruled Sneed's objections and, after considering the police reports, concluded that Sneed was convicted of three separate drug offenses.[3] The district court adopted the PSI's facts and found that Sneed's advisory guidelines range was the mandatory statutory minimum of 180 months' imprisonment.[4] The district court sentenced Sneed to an 180-month term on Count 1 and a concurrent 36-month term on Count 2. Sneed filed this appeal.

## II. DISCUSSION

---

[3]Pursuant to the plea agreement, the parties agreed that if the district court determined that Sneed qualified as an armed career criminal under the ACCA, Sneed could withdraw his guilty plea. After the district court overruled Sneed's ACCA objection, Sneed advised the district court that he wanted to exercise his right under the plea agreement to withdraw his guilty plea. After a brief recess, however, the parties advised the court that they had agreed to modify the plea agreement; in exchange for Sneed not withdrawing his guilty plea, the government agreed not to charge Sneed with any offenses in connection with his recent possession of illegal narcotics on May 8, 2008, June 24, 2008, and October 17, 2008. The district court accepted the modification.

[4]The PSI's factual recitation contained facts surrounding Sneed's subsequent arrests for possession of marijuana on May 8, 2008 and June 24, 2008, which were the subject of pending state charges. In accordance with the agreed modification to Sneed's plea agreement, the district court sustained Sneed's objection to the inclusion of these facts in the PSI, and the court did not adopt them or consider them in sentencing Sneed.

7

## A.     Section 924(e)'s Distinct Offenses Requirement

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) is subject to § 924(e)(1)'s mandatory minimum sentence of fifteen years if the defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both, <u>committed on occasions different from one another</u> . . . ."  18 U.S.C. § 924(e)(1) (emphasis added).  Sneed does not dispute that his three prior state drug convictions are serious drug offenses within the meaning of the ACCA.  Rather, Sneed contends that the district court erred in finding that the three offenses were committed on different occasions as expressly required by § 924(e)(1).

Section 924(e)(1) does not require separate indictments, but it does require that the three previous convictions "be committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  This Court has said that to be different the three convictions must be "'for <u>crimes</u> that are temporally distinct.'" <u>United States v. Sweeting</u>, 933 F.2d 962, 967 (11th Cir. 1991) (quoting <u>United States v. Howard</u>, 918 F.2d 1529, 1538 (11th Cir. 1990)).  The government must show "the three previous convictions arose out of a separate and distinct 'criminal episode.'" <u>United States v. Pope</u>, 132 F.3d 684, 689 (11th Cir. 1998).[5]

---

[5]Whether prior convictions meet the ACCA's separate offenses requirement is a legal determination we review <u>de novo</u>.  <u>Pope</u>, 132 F.3d at 689.

"Mere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode. Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." Id. at 690. Two offenses are distinct if "some temporal 'break' occurs between [them]." Id.

The issue in this case is what can a sentencing court consider in determining whether Sneed's prior drug convictions were committed on occasions different from another for purposes of § 924(e)(1).

## B.    Taylor's Categorical Approach

In 1990, the Supreme Court in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990), addressed how the district court may determine whether a prior conviction is a "violent felony" under § 924(e). The Supreme Court held that the plain language and legislative history of the ACCA "mandates a formal categorical approach," looking only to "the fact of conviction and the statutory definitions of the prior offense," and "not to the facts underlying the prior convictions." Id. at 600-01, 110 S. Ct. at 2159-60.

Taylor reasoned that "the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior

offense." Id. at 602, 110 S. Ct. at 2160. This categorical approach applied because, "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." Id. at 600, 110 S. Ct. at 2159. However, Taylor acknowledged an exception for "a narrow range of cases" in which the statutory definition of an offense encompassed some conduct that would qualify as a "violent felony" and other conduct that would not. In such cases, the district court could look at the charging document and jury instructions to determine if the defendant necessarily was convicted of an offense qualifying as a "violent felony." Id. at 602, 110 S. Ct. at 2160.

## C.    Eleventh Circuit's Richardson Decision

In 2000, this Court in United States v. Richardson, 230 F.3d 1297 (11th Cir. 2000), concluded that Taylor's categorical approach did not apply to the district court's determination of whether prior crimes were "committed on occasions different from one another." Richardson, 230 F.3d at 1299-1300. Richardson explained that whether offenses "were committed on 'occasions different from one another,' i.e., whether they were 'temporally distinct' or 'successive rather than simultaneous,' is a question unsuited to a categorical approach that relies on an examination of the criminal statute. The mere fact of conviction does not answer

10

this question." Id. at 1300. The Richardson Court reasoned that, "[i]n contrast [to

determining the nature of the conviction], determining whether crimes were

committed on occasions different from one another requires looking at the facts

underlying the prior convictions." Id. at 1299. The Richardson Court noted that

the police reports before the district court showed the "burglaries took place on

different days at different locations" and that defendant Richardson had "not

contested the accuracy of the police reports." Id. at 1300. Thus, the Court

concluded that the burglaries were committed on occasions different from one

another for purposes of the ACCA. Id.

## D. Shepard's Modified Categorical Approach

In 2005, the Supreme Court issued Shepard v. United States, 544 U.S. 13,

125 S. Ct. 1254 (2005), explaining further the exception to the categorical

approach recognized in Taylor and providing additional guidance about what

material sentencing courts may use to determine the nature of a defendant's prior

felony convictions for purposes of the § 924(e)(1) ACCA enhancement. See

United States v. Aquilar-Ortiz, 450 F.3d 1271, 1273 (11th Cir. 2006).[6] The

_____

[6]Shepard, like Taylor, involved a prior burglary conviction in a state in which the
burglary statute covered a broader range of conduct than the "generic burglary" needed for an
ACCA enhancement as a "violent felony." The Shepard defendant's prior burglary conviction,
however, resulted from a guilty plea and not a jury trial. At the outset, Shepard made clear that
Taylor's categorical approach applied equally to convictions obtained by a guilty plea. Id. at 19,
125 S. Ct. at 1259. The Supreme Court then discussed what kinds of evidence could be
considered to determine whether the defendant's burglary conviction was actually for an ACCA-

11

Shepard Court concluded that, in determining whether a prior burglary was a "violent felony," the district court (1) may not consider police reports or complaint applications but (2) may examine "the terms of the charging document, the terms of the plea agreement or transcript of the colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [] some comparable judicial record of this information." Shepard, 544 U.S. at 23-26, 125 S. Ct. at 1261-63.

Subsequently, the Supreme Court has explained that Shepard's "modified categorical approach" permits a sentencing court "to determine which statutory phrase was the basis for the conviction by consulting the trial record – including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Johnson v. United States, __ U.S. __, 130 S. Ct. 1265, __ (2010).

Three aspects of Shepard are particularly important to this case. First, the Supreme Court in Shepard observed that the government had argued for a "wider evidentiary cast," looking to police reports for example, but expressly rejected that argument. Shepard, 544 U.S. at 21, 125 S. Ct. at 1260. Second, Shepard was

---

qualifying "generic burglary" and expanded Taylor's list to include the plea agreement and the plea colloquy, which would be available after a guilty plea, but excluded documents, such as police reports, "going beyond conclusive records." Id. at 20-21, 125 S. Ct. at 1259-60.

12

decided in 2005 and stressed (1) the significant developments in the law since Taylor was decided in 1990, such as the 1999 Jones and the 2000 Apprendi[7] decisions, and (2) the constitutional concerns underlying Jones and Apprendi that, except for the fact of a prior conviction, the Sixth Amendment and Fourteenth Amendment guarantee a jury's finding of a disputed fact about a prior conviction where that disputed fact is essential to increase the statutory maximum of a potential sentence. Shepard, 544 U.S. at 24-26, 125 S. Ct. at 1262-63.[8] Third, in part based on the intervening Jones and Apprendi decisions, the Supreme Court in Shepard permitted sentencing courts to determine the nature of a prior conviction based only on the list of judicial records in Shepard or a fact to which the defendant assented (the "Shepard-approved sources") and precluded the sentencing court's use of police reports to establish the nature of a prior conviction for purposes of the § 924(e)(1) enhancement. Id. at 26, 125 S. Ct. at 1263.

### III. SHEPARD'S IMPACT ON RICHARDSON

We acknowledge that Shepard involved the violent felony phrase in § 924(e)

---

[7]Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215 (1999); Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

[8]This portion of Shepard discussing Apprendi and Jones is joined by a plurality of the Court. The plurality opinion concludes, in light of Apprendi and Jones, that permitting sentencing courts to consult police reports would raise serious constitutional concerns. See id. at 25-26, 125 S. Ct. at 1262-63. In his concurrence, Justice Thomas concludes that it "would not give rise to constitutional doubt, . . . . [but] to constitutional error." Id. at 28, 125 S. Ct. at 1264.

13

and did not address the different occasions phrase that immediately follows in § 924(e). And, since Shepard, this Court has not decided whether Shepard's ban on the use of police records and reports applies to § 924(e)(1)'s different occasions inquiry and nullifies our decision in Richardson.[9] We also acknowledge the strength of the prior panel precedent rule in this circuit. Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc. Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001); Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998).

Nonetheless, after considerable review and helpful oral argument, we conclude that the Supreme Court's decision in Shepard has undermined Richardson's approval of the use of police reports for § 924(e)(1) inquiries to the point of abrogation. The ACCA enhancement in § 924(e) contains two statutory predicates in the very same sentence – (1) that the prior convictions are for "a violent felony or a serious drug offense, or both," and (2) that such requisite offenses were "committed on occasions different from one another." 18 U.S.C.

_____

[9]We avoided reaching this question in United States v. Spears, 443 F.3d 1358 (11th Cir. 2006), on the basis that the "Defendant's own testimony sufficiently supports the district court's conclusion that Defendant committed two different robberies, [and thus] we do not reach this [Shepard] argument." Id. at 1360 n.1; see also United States v. Canty, 570 F.3d 1251, 1256 (11th Cir. 2009) (avoiding the issue of Richardson's viability after Shepard because the government waived it in the district court).

§ 924(e)(1). Based on Shepard, there is simply no distinction left between the scope of permissible evidence that can be used to determine if the prior convictions are violent felonies or serious drug offenses or if they were committed on different occasions under § 924(e)(1).

It is noteworthy that Richardson's rationale was (1) that the different occasions inquiry under § 924(e)(1) was unsuited to the categorical approach in Taylor that looked primarily to the criminal statute, and (2) that the different occasions inquiry required looking at the facts underlying the prior conviction. While Shepard, too, allows sentencing courts to consider facts about the nature of a prior conviction, Shepard clarified the type of evidence that could reveal those facts and gave us the Shepard-approved sources largely to address or avoid constitutional concerns. Thus, while Richardson remains correct that in the different occasions inquiry sentencing courts may look to certain facts underlying the prior conviction, Shepard has undermined to the point of abrogation Richardson's approval of the use of police reports for § 924(e)(1) inquiries.

We are further persuaded to this conclusion by our sister circuits that have decided that only Shepard-approved sources can be used to determine if prior offenses were committed on different occasions for purposes of the § 924(e)(1) enhancement. See United States v. Fuller, 453 F.3d 274, 279-80 (5th Cir. 2006)

15

(vacating defendant's sentence as to the § 924(e) enhancement "[b]ecause the record [did] not contain the written plea agreement, the plea colloquy, or other Shepard-approved material that might resolve th[e] question" and stating "[t]o determine whether two offenses occurred on different occasions, a court is permitted to examine only 'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented'"); United States v. Harris, 447 F.3d 1300, 1305-06 (10th Cir. 2006) (affirming defendant's § 924(e)-enhanced sentence in part because "the district court below had sufficient evidence in light of Shepard to conclude that [defendant's] prior crimes were committed on separate occasions," and noting the court relied on defendant's "admissions as well as documents sanctioned by Shepard"); United States v. Taylor, 413 F.3d 1146, 1157 (10th Cir. 2005) (examining what documents could be used in finding that prior convictions occurred on occasions different from the other and remanding because the court could not "determine whether the district court reviewed judicial records consistent with Shepard"); United States v. Thompson, 421 F.3d 278, 282, 286 (4th Cir. 2005) (stating that "[t]he common denominator of the [Shepard] approved sources is their prior validation by process comporting with the Sixth Amendment. Excluded sources, such as . . . police reports, are not necessarily inherent in the

conviction," and the "ACCA's use of the term 'occasion' requires recourse only to data found in conclusive judicial records . . . upon which Taylor and Shepard say we may rely").

For all of these reasons, we hold only that courts may not use police reports to determine whether predicate offenses under § 924(e)(1) were committed on "occasions different from one another" and that Shepard undermines that aspect of Richardson to the point of abrogation.

## IV. SNEED'S SENTENCE

In Sneed's case, the government produced the Shepard-approved state court indictment, but the indictment contains the same language for each of his three drug offenses and does not specify a date or time, much less different dates or different times on the same date. For the ACCA different occasions inquiry, the government relied on police reports and submitted no other Shepard-approved material. And Sneed preserved his objection to the use of this material at every stage of the proceeding, asserted that his prior offenses did not occur on different occasions, and objected to the details in paragraph 34 of the PSI about his prior offenses.[10] Therefore, in light of Shepard and given this record, the district court

_____

[10]Cf. United States v. Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006) (post-Shepard, a sentencing court's findings of fact supporting an ACCA enhancement may be based on statements in the PSI undisputed by the defendant at sentencing); United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009) ("For purposes of sentencing [under the U.S.S.G. § 4B1.1 career offender guideline], the district court also may base its factual findings on undisputed statements

erred in overruling Sneed's objections to the use of the police reports to establish the different occasions predicate to the § 924(e)(1) enhancement. Accordingly, we vacate Sneed's sentence and remand for resentencing without the § 924(e) enhancement.[11]

**VACATED and REMANDED.**

---

found in the PSI, because they are factual findings to which the defendant has assented").

[11]We note the government has not asked that we remand for the government to introduce Shepard-approved material but instead has relied on Richardson.

18