[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13304
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20874-RSR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMIAH FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 2, 2014)

Before WILSON, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Jeremiah Flores pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and being an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). He was sentenced to 180 months in prison, the statutory minimum under § 924(e)(1), and he now appeals. He argues that the district court procedurally erred at sentencing by failing to elicit fully articulated objections from him after his sentence was imposed. He also argues that 18 U.S.C. § 922(g)(1) violates the Tenth Amendment of the U.S. Constitution, and that the district court plainly erred by sentencing him under an unconstitutional statute. After careful review of the parties' briefs, we affirm.

## I. Flores's Objections to his Classification under the ACCA

### A. The Alleged *Jones* Violation

After the district court "states its factual findings, applies the guidelines, and imposes sentence," it must provide the parties the opportunity "to object to the district court's ultimate findings of fact and *conclusions of law* and to the manner in which the sentence is pronounced." *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990) (emphasis added), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc) (per curiam). Flores claims that the district court violated *Jones* in two ways by asking the following question after imposing Flores's sentence: "Now that [the] sentence has been imposed, does the

2

defendant or his counsel object to the Court's findings of fact or the manner in which the sentence was pronounced?"

First, Flores appears to suggest that the court erred by failing to directly elicit objections from the defendant, even where, as here, the defendant was represented. Without suggesting that we would ever adopt such a rule, we reject Flores's claim because even if we were to adopt the proposed rule, it was satisfied. The court specifically asked if "*the defendant* or his counsel object."

Second, Flores claims that the court erred in eliciting objections only as to "the Court's findings of fact or the manner in which the sentence was pronounced," without mentioning, as required by *Jones*, the court's conclusions of law. In *United States v. Campbell*, 473 F.3d 1345, 1348 (11th Cir. 2007) (per curiam), we held that the district court violated *Jones* when the court asked only, "Is there anything further?," and the defendant raised no objections in response. We noted in *Campbell* that "there [was] no indication that defense counsel understood the court to be eliciting objections." *Id.* Flores's contention is therefore premised on the notion that a party hearing an invitation to raise objections to findings of fact or the manner of pronouncement of a sentence would somehow not understand that the court was also eliciting objections generally, including objections to conclusions of law.

3

We reject this contention. The post-imposition question here signaled clearly and obviously that the parties were invited to object. The question in *Campbell*—"Is there anything further?"—could easily have been taken as an inquiry wholly unrelated to objections, and indeed, defense responded by requesting drug treatment for the defendant rather than by offering objections. *Id.* Here, no such confusion was possible, and no one could seriously conclude that objections to conclusions of law were not also invited. Defense counsel concedes that she had no legal objections, so the plausibility of Flores's contention is weakened even further. A defendant would not parse the district court's elicitation and decline to raise objections to conclusions of law because the court only invited objections to conclusions of fact and the manner in which the sentence was imposed. The defendant's failure to offer objections signaled only that he had none—a conclusion confirmed by his failure to discuss any specific objections he would have made at the time had the court given a perfect *Jones* elicitation.

## B. Standard of Review

Regardless of whether a *Jones* violation occurred, it is appropriate to consider the merits of Flores's objections in this appeal. Flores's brief states that, as a result of the *Jones* violation, we should remand "to the district court for resentencing so that Mr. Flores can articulate his specific objections to the district court's legal conclusions on his objections." The objections on which the court

4

rendered legal conclusions were found in a pro se brief filed by Flores.  In that filing, he objected to his classification as an armed career criminal in the Presentence Investigation Report (PSI).  The district court, after noting that it would normally strike such pro se objections filed by represented defendants, nevertheless overruled Flores's objections on the merits, stating:

> [I]t has been noted in the PS[I] addendum that that [Flores's objection] has been rejected by the Eleventh Circuit Court of Appeals. But even if it had not, there are enough independent criminal history points that the criminal history would come out to a level six whether you were a career offender or not, I believe.  If anybody thinks I'm mistaken, I'll hear that now.[1]

In stating that he has "objections" to these legal conclusions, Flores is more or less stating that he wants to appeal the district court's decision.  The court's alleged *Jones* violation did not deprive him of this opportunity.  In *United States v. Weir*, we held that when the "district court clearly underst[ands] the [party's] position and specifically reject[s] it[,] [t]his satisfie[s] the purpose of *Jones* to allow the district court to make a studied decision on the objection."  51 F.3d 1031, 1033 (11th Cir. 1995).  *Weir* further held that objections which are raised and addressed before the sentence is imposed need not be re-raised after the *Jones*

---

[1] *Jones* required *post-imposition* elicitations to ensure that objections related to "what transpire[d] at the sentencing hearing itself" would be addressed.  899 F.2d at 1102.  The court's elicitation for *anyone* to state whether the court was mistaken seems to satisfy the purpose of *Jones* but not its timing requirement.  We have not held, however, that a *Jones* violation—failing to elicit objections *post-imposition*—will be deemed harmless so long as the court elicited objections at some point following the objectionable conduct, and we need not do so to decide this case.

5

elicitation in order to be preserved for appeal, *id.*, so Flores's pro se objections are preserved.  Rather than grant Flores remand, which is not warranted because it does not appear a *Jones* violation occurred and which seems pointless given that the objections Flores seeks to make were already considered and rejected by the court to which we would remand, we will simply construe his "objections" to the court's legal conclusions as an appeal from the court's decision to sentence him in accord with the PSI.

We review sentences for reasonableness.  *United States v. Martin*, 455 F.3d 1227, 1235 (11th Cir. 2006).  We review the district court's legal interpretations de novo and its factual findings for clear error.  *Id.*[2]

### C.  The Merits of Flores's ACCA Objections

Flores objected to his classification under the ACCA, claiming that his prior convictions did not constitute "serious drug offense[s]" under § 924(e)(2)(A)(ii) because the convictions failed to specify the quantity of drugs involved.  In *United States v. Sanchez*, we recognized that the prior drug offenses at issue there could

---

[2] "Typically, when a defendant fails to object to an alleged error before the district court, we review the argument only for plain error," *United States v. Johnson*, 451 F.3d 1239, 1240 (11th Cir. 2006) (per curiam).  Appellants claiming a *Jones* violation almost always do so in order to avoid being subjected to plain error review.  Here, as already discussed, based on *Weir* and by virtue of the fact that Flores raised his objections below, Flores was never at risk of being subjected to plain error review, so establishing a *Jones* violation would not help him unless he has new objections, which he does not.

In any event, the remedy for a *Jones* violation is not automatic remand as Flores seems to suggest.  Where, as here, the record is sufficient to permit meaningful appellate review of any objections, we may review such objections and remedy the *Jones* violation by reviewing under a preserved error standard.  *See id.* at 1242.  Therefore, even if there were a *Jones* violation, the remedy would be to review Flores's objections as if they were preserved below.

not be classified as "serious" for purposes of sentencing under 18 U.S.C. § 3559(c) for this very reason. 586 F.3d 918, 929–30 (11th Cir. 2009). If such convictions do not constitute "serious drug offense[s]" under § 3559(c), they should not under § 924(e), either, Flores claims.

We agree with the PSI's conclusion, echoed by the district court, that this case is not analogous to *Sanchez*. To be sure, the statute at issue in *Sanchez*, § 3559(c), and the statute at issue here, § 924(e), use the phrase "serious drug offense," but the statutory definitions of that phrase are different. The definition in the former is defined, at 18 U.S.C. § 3559(c)(2)(H), by cross-referencing various portions of the federal Controlled Substances Act, which define offenses based in part on the amount of drugs involved. Section 924(e)(2)(A)(ii), by contrast, defines the same phrase as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." Thus, when *Sanchez* held that underlying convictions required proof of the amount of drugs involved, it did so because of the statutory definition of "serious drug offense" applicable to § 3559(c). The statutory definition of that phrase in § 924(e) has no such requirement.

The offenses here are second degree felonies under Fla. Stat. § 893.13(1)(a) for sale of cocaine and possession of cocaine with intent to sell. Second degree

7

felony drug convictions qualify as serious drug offenses for purposes of the ACCA because they carry maximum penalties of more than ten years, regardless of the quantities involved. Fla. Stat. § 775.082(3)(c). Thus, the district court properly overruled Flores's objection to the PSI on this basis.[3]

Flores also contended that two of the three underlying convictions used to classify him as an armed career criminal were handed down on the same day, so they were not "committed on different occasions" as required under 18 U.S.C. § 924(e)(1). PSI Addendum, upon which the district court relied, noted that there were actually four separate offenses. This implies that even if the two convictions from the same day only constituted a single occasion, there were still a total of three, sufficient for classification as an armed career criminal under § 924(e).

Neither the PSI Addendum nor the district court addressed Flores's argument that *United States v. Sneed* precluded the use of police reports and other sources that were not approved in *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254 (2005), in determining whether offenses were committed on different occasions. 600 F.3d 1326, 1333 (11th Cir. 2010). First, we note that Flores's

---

[3] We note that technically, the district court erred by stating that the Eleventh Circuit had previously rejected a similar argument. The cases cited in the PSI addendum are actually district court opinions. *See Jackson v. United States*, 923 F. Supp. 2d 1334, 1338 (M.D. Fla. 2013) (citing *Brantley v. United States*, Nos. 8:11-CV-1750-T-33EAJ, 8:09-CR-132-T-33EAJ, 2011 WL 6057510, at *8 (M.D. Fla. Dec. 6, 2011)). The government's response to Flores's pro se motion erroneously cited the same cases as Eleventh Circuit decisions, perhaps explaining the same error in the PSI. Regardless, the reasoning of the opinions is correct and flows obviously from the text of the relevant statutes.

factual proffer—an acceptable source under *Shepard*, *see Sneed*, 600 F.3d at 1333 (listing *Shepard*-approved sources)—lists the four separate convictions mentioned in the PSI Addendum, so *Sneed* does not undermine the conclusion in the PSI. Second, as the government notes, though two of Flores's convictions occurred on the same day, the crimes occurred separately, on September 23, 2006 and October 5, 2006. Flores does not dispute the government's assertion that these details are found in the Informations and Judgments for these cases, which are approved sources under *Shepard*. 544 U.S. at 26, 125 S. Ct. at 1263.

Flores also challenged his criminal history category, but that objection is irrelevant once his classification under § 924(e) is established. Section 924(e) includes a statutory minimum sentence of fifteen years, which is precisely the sentence Flores received. Consequently, regardless of whether a *Jones* violation occurred, Flores's objections to the district court's legal conclusions regarding his objections to the PSI either fail or are inconsequential. He was properly categorized as an armed career criminal under the ACCA, a crime and classification to which he pled guilty. Accordingly, he was reasonably sentenced to the statutory minimum period for this crime.

## II. Flores's Tenth Amendment Challenge

Flores further claims that we should vacate his sentence because 18 U.S.C. § 922(g)(1) violates the Tenth Amendment. Regardless of whether this argument

was preserved, we must determine whether the statute is unconstitutional. *United States v. Walker*, 59 F.3d 1196, 1198 (11th Cir. 1995) (noting that the plain error standard applies to claims that have not been preserved but that there is "no plainer error than to allow a conviction to stand under a statute which Congress was without power to enact"). We have held that § 922(g)(1) is not unconstitutional facially. *See United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010) ("[T]his court has already held that 18 U.S.C. § 922(g)(1) is not constitutionally invalid under the Commerce Clause . . . [provided] that the government prove[s] some 'minimal nexus' to interstate commerce." (citation omitted)).

Nor is the statute unconstitutional as applied in these exact circumstances. Flores's factual proffer establishes that the firearm and ammunition in this case were manufactured outside the state of Florida, and that creates a sufficient nexus to interstate commerce to overcome Flores's Tenth Amendment challenge under our precedent. *Id.* (noting that the government may establish the minimal nexus "by demonstrating that the firearm . . . traveled in interstate commerce[,] [and] [h]ere, the government established that the firearms . . . were manufactured outside of Florida [meaning they] necessarily traveled in interstate commerce" (citation, internal quotation marks, and alteration omitted)).[4]

---

[4] Flores essentially concedes this point but notes that the Supreme Court has granted certiorari to determine whether the Tenth Amendment poses any limitation on Congress's

Having thoroughly reviewed Flores's objections to his sentence and the district court's legal conclusions, we find them meritless. Flores pled guilty to crimes which carry a fifteen year minimum sentence, and that is precisely the sentence he received. Accordingly, we affirm.

**AFFIRMED.**

---

authority to regulate intrastate criminal activity. *See United States v. Bond*, 681 F.3d 149 (3d Cir. 2012), *cert. granted*, __ U.S. __, 133 S. Ct. 978 (U.S. Jan. 18, 2013).